## Case No. 10,915.

### The PENANG.

[4 Sawy. 100.] [1]

District Court, D. California. Oct. 21, 1876.

MASTER—COOK—DISRATING.

Held, that although the cook had been guilty of some misconduct, the master had no right, under the circumstances, to offer him the alternative either to be discharged in a foreign port, on payment of a little more than half his wages earned during a service of seven and a half months, or else to go into the forecastle with the men, "where he would have a chance to earn a portion of his wages, or at least his grub, and if he refused to work, to be charged for board."

In admiralty.

Daniel T. Sullivan, for libellant.
Charles Page, for claimant.

HOFFMAN, District Judge. It is extremely difficult to discern what justice demands in this case. The captain saw fit to disrate the cook and send him into the forecastle, on the refusal by the latter to accept his discharge at Callao and payment of wages at the rate of $30 per month, instead of $50, at which he had shipped. The reasons for this step, as set forth in the official log-book, were the repeated disobedience by the cook of lawful orders, his lying and treacherous conduct, his inefficiency and willful misconduct after ample time had been given him for improvement.

The lying and treacherous conduct referred to seems to have been the refusal of the libellant to accept his discharge and payment at $30 per month, after having agreed to do so, as the master alleges. But the libellant denies that he ever consented to submit to so considerable a reduction of his wages for the whole period of his service—seven and one-half months. And the probabilities are in favor of his statement. He was undoubtedly willing to leave the vessel on being paid in full, and it is much to be regretted that the master did not accept his offer. It is to be observed, moreover, that the captain sent him forward to work with the men immediately on his return from the hospital at Callao.

The official log states that the libellant was allowed to go to "a hospital on one of Mr. Swayne's estates," but that without permission he took the steamer for Callao. It does

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Affirmed in 5 Pet. (30 U. S.) 481.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

not appear, however, that the master had made any arrangements for his reception at that hospital, if any such existed, and the certificate of the doctor to the effect that a residence of twenty or thirty days in a hospital was necessary to effect his cure seems inconsistent with the idea that he could have obtained there the necessary medication.

At all events, the libellant proceeded directly to the nearest American consul, and procured from him admittance into a public hospital. I cannot regard his conduct in this instance as deserving any particular censure. He left the vessel on or about March 18, 1876, and returned without delay on being discharged "cured" from the hospital. He reached the bark on the fourth April, and was at once turned forward, as before stated. Whatever may have been the previous misconduct or inefficiency of the cook, it had not been considered sufficiently important to be noted in the official log. The entries on pages 10 and 11 are dated from March 3 to April 14.

It is not pretended that these dates indicate the time of the entries. They refer to the dates of the occurrences recorded. The handwriting of both these pages is singularly uniform, and its appearance, the color of the ink, etc., suggest irresistibly the conclusion that the two pages were written at the same time. The latest entry, of April 14, is dated at Samanca, and states the "above statements were read to the libellant," etc. It is to be presumed that in compliance with law the entries were read to the libellant as soon as made. No reason existed for omitting to read an entry made at Cerro Azul on the fifth March until the fourteenth April, when the vessel was at Samanca. I think, therefore, that it may be concluded with reasonable certainty that none of these entries were made until after the cook's return on the eleventh April from his second visit to the consul at Callao, and after the captain had declared to him his final determination not to allow him to resume his duties, and had ordered him forward. The official log shows, as has been stated, that on the fourteenth April entries, extending from March 3 to April 4, were read to the libellant. The succeeding page (12) contains entries of other matters dated on April 27 and 28. The first entry on the next page (13) is dated April 11, and refers to the return of libellant from Callao, and his disrating by the captain. The other entries are on the fourteenth, twenty-sixth, twenty-seventh, and twenty-eighth. The latter states that the previous entries were read to the libellant.

It is evident that all these entries must have been made subsequently to April 14, when the previous entries on pages ten and eleven were read to the cook. I have referred to these entries thus particularly, to show that in all probability no one of them was made until after the final refusal of the libellant to accept his discharge and payment of wages at $30 per month, and after the captain had informed him that he must finish the voyage in the forecastle. They seem to have been intended as an explanation or justification of that proceeding. The entry March 3, 1876, in substance that the cook had received orders on September 17, preceding, as to lighting and extinguishing his fires; that he had disobeyed them on two different occasions, and again on the day on which the entry bears date. That on being reprimanded by the master he got "into a rage, and said that in future he would use double the amount of fuel he had been using before; that afterwards he told the captain that if he would give him $10 per month, he would leave him and trouble him no more. The captain told him he was willing to pay him more money than that, or all that he was worth, and more too. Cook replies that he would kiss the captain's hands and feet if he would." The entry of March 16, states that the cook wanted his discharge, said he would be perfectly satisfied with whatever the captain was willing to pay him. Captain gave him $110 on account, and an order on an agent for $240 more.

On the eighteenth the log states that captain and cook went ashore to see captain of the port, with whom the ship's articles were deposited, where the cook contradicted his statement, and said he was not satisfied with the amount paid to him.

The entry of April 4, made after the cook returned on board from the hospital, states that the cook asked the captain to allow him to go and see the consul at Callao. The captain told him he might do so if he was willing to accept the amount he had left for him with the consul, otherwise he would have to return on board again; "with this understanding the cook went on shore to go to Callao." It will be observed that the cook had already been ordered forward to work with the men. On the eleventh of April the cook returned, having declined to accept the wages at $30 per month which the captain had left with the consul. It was then that the captain reproached him with lying and treachery, disobedience of orders and inefficiency, and informed him that he must finish his voyage in the forecastle. The cook denies that he ever agreed to accept the reduced rate of wages offered him by the master. That he ever deliberately intended to do so I can hardly believe. But it is probable that in the excitement and anger of the moment he may have used some expressions which induced the master to think he might get rid of him on those terms.

Neither the entry of April 4 nor the master's account of the circumstances attending his second trip to Callao to see the consul show with any certainty that the cook either knew or agreed to accept the sum left for him with the consul. But in any case he had a right to retract his acceptance of the master's offer; and the question arises, had the

latter, under the circumstances, the right to insist upon it, and to disrate the cook if he persisted in his refusal?

The evidence discloses that the cook, on several occasions, was guilty of disobedience of the master's orders with regard to the fires, and when reprimanded he probably answered in a hasty and passionate manner. There also seems to have been much complaint with regard to the cooking, and his personal habits appear to have been uncleanly. Some of the crew state, however, that he did as well as possible under the circumstances, subject as he was to constant annoyance from the officers and crew. The cook assigns as a reason for the bad cooking that he had no pepper or onions with which to flavor the messes. I think it established by the proofs that the galley was kept in a very dirty condition.

On the other hand, there is no pretense that the cook was dishonest, drunken or lazy. The duties he had to perform required much diligence; he served as cook and steward for eight men and four officers. His successor was assisted by a boy, a fact which the mate, with some disingenuousness, suppresses.

I have endeavored to form as just an estimate as possible of the faults and short-comings attributed to the cook. They were such as to give some just ground for dissatisfaction on the part of the master, but I cannot consider them so flagrant as to authorize the latter to insist upon the alternative he offered him, viz.: either to be discharged on payment of a little more than half the wages due him for a service of seven and a half months, or else to go into the forecastle and work with the men, "where he would have a chance to earn a portion of his wages, or at least his grub; and if he refused to work, to be charged for board." The remainder of the voyage occupied more than five months and a half. It is now claimed that his refusal to work with the men operated a forfeiture of even the reduced wages earned while he was acting as cook, and that he is entitled to nothing for more than a year's service. I think that such a penalty would be out of all proportion to the faults and misconduct of which he may have been guilty.

The master's conduct seems to me to have been unjustifiably harsh. He had no right to arbitrarily impose a forfeiture of nearly one-half the stipulated wages earned since the commencement of the voyage; a period of seven and one-half months, during the first two or three of which there seem to have been no grounds for complaint, and when at no time had the cook's misconduct been such as to make it, in the master's judgment, worth while to make any entry whatever with regard to him in the official log. The cook had the right to be cured at the ship's expense of an illness, contracted in the service. His trips to Callao cost him, he avers, $120. His whole claim for balance of wages and expenses is $674. I think his conduct justi-

fies some abatement of this claim, but I cannot regard the master as authorized to retain him on board during the five and one-half remaining months in a position of enforced idleness, or at least where his only chance was to "earn a portion of his wages, or at least his grub."

I shall decree to the libellant the sum of $500, with costs.